UNITED STATES of America, Plaintiff,

v.

Herman L. TAYLOR, Defendant.

Nos. Cr-224-G-61, Cr-225-G-61.

United States District Court
M. D. North Carolina,
Greensboro Division.

Aug. 27, 1963.

William H. Murdock, U. S. Atty., for the United States.

Romallus O. Murphy, Erie, Pa., for defendant.

EDWIN M. STANLEY, Chief Judge.

On June 2, 1961, the defendant, Herman L. Taylor, was charged in two separate indictments with tax offenses. In No. Cr-224-G-61 he was charged in separate counts with wilfully failing to file Federal tax returns for 1956 and 1957, in violation of 26 U.S.C. § 7203, and in No. Cr-225-G-61, he was charged in a one-count indictment with wilfully and knowingly attempting to evade and de-

feat a large part of his Federal income tax for the year 1955 by filing a false and fraudulent tax return, in violation of 26 U.S.C. § 7201.

At the December, 1961, criminal term of court, the defendant entered a plea of guilty to both counts in No. Cr–G–224–G–61, and a plea of not guilty to the charge in No. Cr–G–225–G–61. On the latter case, he was tried and convicted by a jury. The defendant was given prison sentences of two years and fined $10,000.00 in each of the cases. The prison sentences were ordered to run concurrently, but the fines were cumulative and in the total sum of $20,000.00. The execution of the prison sentence was suspended and the defendant was placed on probation for a period of five years subject to certain general conditions, and upon the special condition that he pay his $20,000.00 fine, and certain delinquent taxes, within specified times.

The defendant appealed to the Court of Appeals from his conviction on the charge of wilfully filing a false and fraudulent income tax return, and challenged the right of the court to require the payment of delinquent taxes as a special condition of probation in both cases. The Court of Appeals affirmed the conviction in No. Cr–225–G–61, holding that the evidence was sufficient to sustain the jury's determination of guilt beyond a reasonable doubt. It was held, however, that this court exceeded its authority in ordering a restitution to the Government of certain portions of the taxes as a special condition of probation. United States v. Taylor, 4 Cir., 305 F.2d 183 (1962). The Supreme Court denied certiorari. Taylor v. United States, 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962). Following the decision of the Court of Appeals, and while the matter was pending in the Supreme Court of the United States, an order was entered deleting the earlier requirement that delinquent taxes be paid as a special condition of probation. The order also provided for the payment of the $20,000.00 fine within 30 days after the Supreme Court finally disposed of the defendant's

petition for certiorari. A final disposition was made on December 17, 1962, when the Supreme Court denied a petition for rehearing. Taylor v. United States, 371 U.S. 943, 83 S.Ct. 322, 9 L. Ed.2d 277 (1962).

No part of the fine having been paid within the time prescribed, the court ordered the arrest of the defendant on a warrant charging the violation of the special condition of probation. At a hearing conducted on January 31, 1963, after finding that the defendant had violated the special condition of probation by failing to pay any part of his fines, the order of probation was revoked and the defendant was committed to serve the original prison sentence of two years. The defendant again appealed to the Court of Appeals, contending that since his failure to pay the fines was due to his poverty, and was not wilful, the court abused its discretion in revoking his probation. The Court of Appeals handed down its decision on June 5, 1963, vacating the order of revocation of probation and remanding the case for more specific findings on defendant's plea of pauperism. United States v. Taylor, 4 Cir., 321 F.2d 339 (1963).

In obedience to the mandate of the Court of Appeals, an order was entered on July 25, 1963, a copy of which was served upon the defendant, setting the matter for further hearing on August 16, 1963, at which time the court would receive evidence from the Government and the defendant bearing upon the defendant's plea of pauperism. After considering the evidence offered by the Government and the defendant at the August 16, 1963, hearing, including exhibits received in evidence, and the evidence received at the trial and prior hearings bearing upon the issue under inquiry, the court finds the following facts:

1. The defendant is a native of Richmond, Virginia, and is a 1945 graduate of Columbia University Law School in New York.

2. The defendant is a member of the Bars of New York and North Carolina, and has regularly engaged in the general

practice of law in Raleigh, North Carolina, since 1947.

3. Prior to attending law school, and while going to college, defendant was employed as a bookkeeper at the Virginia Union University in Richmond, Virginia.

4. The defendant taught law at North Carolina College in Durham, North Carolina, from 1945 to 1947.

5. The defendant is familiar with the basic principles of Federal Income Tax law, and a part of his work as a practicing attorney has been to prepare Federal income tax returns for others.

6. The defendant entered a plea of guilty to receiving a gross income of $12,439.67 in 1956, and a gross income of $22,481.18 in 1957, and wilfully failing to file a Federal income tax return for either year.

7. With respect to the year 1955, the defendant was convicted of filing a fraudulent income tax return wherein he stated that he had no taxable income, when he knew he had a taxable income for said calendar year of $6,162.54.

8. For the year 1958, the defendant filed a tax return showing gross receipts from his law practice of $12,562.83, and a tax due of $598.90. No part of the tax was remitted with the return and no part has been paid.

9. The income tax return of the defendant for the year 1959 shows total receipts from his law practice of $21,040.62, and a tax due of $1,935.81. No part of the tax has been paid. Claimed as a business deduction on this return was depreciation on a 1958 Model Oldsmobile costing $5,500.00, and a 1959 Model Cadillac costing $5,600.00. The total depreciation claimed was $3,300.00.

10. In his 1960 income tax return, the defendant showed total receipts from his law practice of $17,940.20, and a tax due of $426.51. No part of the tax has been paid. Claimed as a business deduction on this return was depreciation on a 1958 Model Oldsmobile costing $5,500.00, a 1960 Oldsmobile costing $5,400.00, and a 1959 Model Cadillac costing $5,600.00. The total depreciation claimed as business expense on these three automobiles was $5,940.00.

11. On his 1961 income tax return, which was filed on April 15, 1962, some four months after his conviction in these cases, the defendant showed receipts from his law practice of $17,223.62, and a tax due of $400.34. No part of the tax has been paid. This return shows that the defendant spent $50.00 during the calendar year on amusement taxes and contributed the sum of $100.00 to the Boy Scouts of America. Additionally, the defendant claimed as a business deduction the sum of $1,500.00 arising from bad debts, and admits that he reported his receipts on a cash basis. Claimed as a business deduction was depreciation of $1,500.00 on a 1961 Model Cadillac, purchased at a cost of $6,700.00. The defendant also claims that he spent the sum of $600.00 during the year 1961 on business books and publications.

12. On his 1962 income tax return, the defendant shows gross receipts of $10,769.24, and a tax of $312.58. No part of the tax has been paid. The defendant claimed as deductions for the year 1962 miscellaneous contributions of $100.00 in addition to contributions to his church in the sum of $150.00, and payment of $550.00 in real estate taxes, the payment of $250.00 gasoline tax, the payment of $353.72 to law book publishers, the payment of $676.83 in telephone bills, and a payment of $627.78 in travel expenses.

13. Since December 20, 1961, the date of his conviction, the defendant has maintained bank accounts in three separate banks in Raleigh, North Carolina, during which time he has deposited a total of $73,675.14 and has withdrawn $76,323.18. During the same period, an analysis of his cancelled checks indicates that defendant made personal expenditures on old and current debts of $13,129.80. On January 26, 1962, he made a down payment of $323.45 on a 1961 Model Corvair purchased in the name of Audrey Hunter Logan. The defendant claims that this was a loan to Miss Logan.

14. Since January 1, 1963, the defendant has deposited to his three bank accounts the sum of $11,033.11, and has withdrawn the sum of $12,495.50. It is impossible to tell the portion of the deposits made since December 20, 1961, that represents gifts, loans, redeposits or funds belonging to others. The defendant testified that such items represent a part of the deposits, but made no attempt to determine any specific amount.

15. The defendant currently owns a home which he values at $19,000.00, upon which there are encumbrances totaling about $18,000.00. The defendant conveyed this home to his law partner in March of this year without consideration, and characterizes the transaction as one on paper only. The law partner is living in the home and is making the monthly loan payments in lieu of rent, and has an option to purchase the home for $21,000.00. In August of 1962, the defendant placed a second mortgage on his home in the sum of $6,500.00. A portion of this money was presumably used to pay some prior debts or encumbrances upon the home.

16. The defendant owns a 1960 Model Oldsmobile, which he values at $1,500.00 and upon which there is an encumbrance of $625.70. He also owns office furniture and fixtures he values at $500.00, and a library which he values at $1,500.00. There is no encumbrance upon the office furnishings or library. The defendant offers no explanation as to why he claimed a business expense of $600.00 during the year 1961, and a business expense in 1962 of $353.72, for books and publications, and presently owes law book publishers more than $1,400.00, and now values his library at not more than $1,500.00. His home furnishings, which he says he gave to his wife when she went to New York some months ago to live with their daughter, are valued at $500.00. Presumably included in these furnishings is a color television set purchased on December 15, 1960, for $1,272.96, which the defendant says he gave to his wife and daughter. The home furnishings are presently stored in Raleigh. The defendant finished paying for the color television set on December 19, 1962, when he made a payment of $106.08.

17. During the spring of 1963, the defendant borrowed $4,000.00 from a number of friends. No part of these loans was applied upon his fines. The contention is that the defendant used the proceeds of the loans for personal expenses.

18. In June or July of 1962, the defendant sold a Cadillac automobile for which he received a net of $300.00 over and above the encumbrance. He states that he is now practically destitute, having lived for the past several months largely on money borrowed from friends and associates. This contention, however, is unworthy of belief and is rejected.

19. In his 1961 income tax return, the defendant claimed a "loss from business venture" in the sum of $2,643.37. He says this item represents the net amount of loss in promoting two public dances.

20. During the spring of 1963, defendant liquidated his membership in a country club for $445.00.

21. The defendant admits that by "a sacrifice" he could have paid a portion of his fine, but states that at no time has he been able to pay the entire amount.

22. On August 15, 1963, the day before the hearing, the defendant filed a motion that he be allowed to discharge his fine in installments "according to his ability to pay same" out of future earnings. The motion contains no suggestion as to when and what amounts the defendant contemplates paying on his fines, or what pleasures and conveniences he desires to provide for himself and family before sharing with the Government. The defendant states that it had just occurred to him that he might be permitted to make installment payments. This contention is completely rejected as wholly incredible.

Upon the foregoing facts, it is apparent that the defendant, if he earnestly

desired to do so, could have paid all or a substantial portion of his fines. He has a long and continuous history of totally disregarding his obligations as a citizen and taxpayer, and being a person interested in providing for himself and family the luxuries of life, even at the expense of defrauding his Government. While enjoying a lucrative law practice, he has preferred to own numerous expensive automobiles rather than meet his obligations as a taxpayer. On April 14, 1961, shortly before the return of the indictments in these cases, the defendant filed his 1960 income tax return showing the use of three automobiles in connection with his business as a practicing attorney, having a total purchase price of $16,500.00, and claimed depreciation of $5,940.00 as business expense. To further minimize his tax liability, he claimed deductions for bad debts in his law practice, when he admits that he was on a cash basis. Certainly a graduate of Columbia University Law School, a law professor and an attorney enjoying a lucrative practice over a period of many years, knew better than to engage in these tactics. He not only wilfully failed to file an income tax return for two years, and knowingly filed a false and fraudulent return for another year, but continued to enjoy a substantial income without paying any tax whatever or making any payment on his fines. With the defendant's record of tax evasion and avoidance, there is no reason to believe that he would be adverse to secreting his assets or giving false information concerning his ability to pay. In the final analysis, by revoking his probation, the defendant is not being punished for his pauperism, but for grievous crimes committed against the Government.

The court concludes that the failure of the defendant to pay all or any portion of his fines has been wilful, deliberate and intentional, and that the defendant's plea of pauperism is not sincere or in good faith. While he says he is not a person of great means today, the court is of the opinion that his evidence on this point is not worthy of belief, particularly in light of his long and continuous history of total indifference to his legal obligations under the Internal Revenue laws of the United States.

For the reasons stated, the court is at the time of the filing of this memorandum opinion entering an order again revoking the defendant's probation for wilful failure to pay his fines and committing him to imprisonment for the original term of two years.

Additionally, an order has this day been entered denying the motion of the defendant that he be permitted to pay convenient sums out of future earnings in discharge of his fines.